UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

         v.

ANTHONY WILLIAMS,

                Defendant.
_____

REPORT & RECOMMENDATION

07-CR-6124L

**PRELIMINARY STATEMENT**

        By Order of David G. Larimer, United States District Judge, dated April 28, 2008, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 48).

        Defendant Anthony Williams ("Williams") has been charged in a two-count indictment. The first count charges that on April 13, 2007, Williams unlawfully possessed a firearm after having previously been convicted of crimes punishable by terms of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The second count subjects Williams to forfeiture upon conviction, pursuant to 18 U.S.C. §§ 924(d) and 3665. (Docket # 22).

Currently pending before this Court for Report and Recommendation are Williams's motions to dismiss the indictment and to suppress statements and tangible evidence.[1] The following constitutes this Court's recommendation on the pending motions.

## FACTUAL BACKGROUND

An evidentiary hearing relating to Williams's suppression motions was conducted before this Court on January 24, 2008.  During the hearing, the government offered testimony of Officer Giovanni Maldonado of the Rochester Police Department and Parole Officers Michael Valente and Jeffrey Woolson of the New York State Division of Parole.  No witnesses were called by the defense.  The following is a summary of the credible evidence presented at the hearing.

During the evening of April 13, 2007, members of the Rochester Police Department's Special Operations Section were conducting an investigation of an unidentified parolee (not the defendant) for suspected narcotics activity.  At approximately 9:00 p.m., the investigating narcotics officers observed that individual enter a black Ford Expedition registered to Anthony Williams.  (Tr. 42, 68).[2]  One of the investigating officers reported this observation to Parole Officer Michael Valente.  Valente, who was not Williams's supervising officer, then reviewed Williams's parole supervision file and determined that Williams was on parole

---

[1] Williams's omnibus motions also sought discovery and inspection, *Brady* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, *Jencks* material, notice pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure and the preservation of rough notes.  (Docket # 30).  Each of these requests was either resolved by the parties or decided in open court by the undersigned on December 19, 2007.  (Docket ## 35, 38).

[2] The transcript of the suppression hearing conducted before this Court on January 24, 2008 (Docket # 42) shall hereinafter be referenced as "Tr. __".

following a conviction for criminal sale of a controlled substance and that his conditions of parole included a 9:00 p.m. curfew and a restriction of his driving privileges permitting him to drive only "for work and parole purposes." (Tr. 43-44). Valente conveyed this information to the investigating officers. (Tr. 44).

Later that evening, at approximately 11:45 p.m., Officer Maldonado and his partner, Officer Cindy Nuritor, were contacted by the investigating officers and asked to conduct a traffic stop of the Ford Expedition in order to identify the driver. (Tr. 26, 42). Maldonado had previously been advised by the investigating officers that Williams was on parole and subject to a curfew. (Tr. 13, 25-26, 31). As Maldonado's patrol car approached the Ford, Maldonado noticed that it had illegally tinted windows. Maldonado and Nuritor then effected a traffic stop by activating their emergency lights. (Tr. 11). A subsequent test with a tint meter confirmed that the windows of the Ford were tinted beyond the legal limits.[3] (Tr. 9-11).

Once the Ford had stopped, Maldonado approached its driver's side window and asked the driver for his license and registration; the vehicle had no passengers. (Tr. 12-13). Maldonado reviewed the photograph on the driver's license and identified the driver as Williams. (Tr. 15). Maldonado asked Williams where he was coming from and where he was going, and Williams responded that he had been to the movies and was on his way home. (Tr. 14).

Maldonado then returned to his patrol car to perform a records check and confirmed that Williams was under parole supervision. (Tr. 16). Based upon Williams's parole status and the time of night, Maldonado suspected that Williams was violating a curfew

---

[3] The Ford permitted only sixteen percent light transmittance. (Tr. 11). According to Maldonado, New York State Vehicle and Traffic law requires at least seventy percent light transmittance. (Tr. 11). *See* N.Y. Veh. & Traf. Law § 375(12-a)(b).

3

condition of parole.[4]  (Tr. 18).  At that point, Maldonado asked Williams to step out of his vehicle.  (Tr. 17-18).  Williams did so, but then turned back and started to reach into the open door.  (Tr. 19).  Maldonado stopped him, placed him in handcuffs and escorted him to the back of the vehicle, where Officer Lyons pat-frisked him.  (Tr. 20-22).  Following the pat-frisk, Williams was placed in the rear seat of Maldonado's patrol vehicle, while the officers contacted the Division of Parole.  (Tr. 23).

Parole Officers Valente and Jeffrey Woolson responded to the scene approximately ten to fifteen minutes later.  (Tr. 23, 44, 75).  When they arrived, Valente spoke with Maldonado and reviewed Williams's driver's license.  (Tr. 46-47).  Valente then approached the patrol car in which Williams was sitting, introduced himself and asked him whether the driver's license was his.  Williams replied that it was.  (Tr. 48).  Valente questioned Williams about what he was doing and whether he had a curfew.  Williams indicated that he was coming home from the movies and that he had a curfew.  Valente stated, "so, you're past your curfew?"  Williams replied, "Yes."  (Tr. 48).  Following some further discussion about Williams's parole conditions (the specific subject of which was not identified), Valente told Williams that he would like to search his vehicle and asked, "Is that okay?"  Williams "slumped down" and responded, "Yes."  (Tr. 48, 57).

---

[4] Maldonado testified that he was not advised of the precise time of Williams's curfew, but he knew that parole curfews were generally 9:00 p.m.  (Tr. 31-32).

Valente and Woolson thereafter searched the Ford;[5] Valente explained that the purpose of the search was to search for evidence of a parole violation or "new criminal activity." (Tr. 57, 60, 76). Woolson observed a handgun between the driver's seat and the center console. (Tr. 61, 77). Upon discovery of the firearm, the parole officers discontinued the search and notified the police officers. (Tr. 78).

The Ford was towed from the scene, and an inventory search was conducted. (Tr. 23-24). According to Maldonado, inventory searches are routinely performed every time a vehicle is towed in order to secure valuables located inside the car. (Tr. 24).

## DISCUSSION

Before this Court for Report and Recommendation is Williams's motion to suppress statements made by him following the traffic stop on April 13, 2007, and to suppress the firearm seized from the Ford Expedition. Williams further moves to dismiss the indictment based upon his allegations of insufficiency of the evidence. (Docket # 30). The government opposes each of Williams's motions. (Docket ## 46, 39).

---

[5] Valente also testified that, as a parolee, Williams was required to sign a document acknowledging the conditions of his parole. (Tr. 40-50; G.Exs. 1, 1A, 1B, 1C). One of those conditions provided:

> I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property. I will discuss any proposed changes in my residence, employment or program status with my Parole Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employment or program status when circumstances beyond my control make prior discussion impossible.

(Tr. 54; G.Ex. 1).

I. **Motion to Suppress Statements**

    A. **Initial Traffic Stop:**  According to the Second Circuit, an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth Amendment.  *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)), *cert. denied*, 513 U.S. 877 (1994).  A traffic stop must be justified by probable cause or "reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *Id.* (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993), *cert. denied*, 511 U.S. 1006 (1994)); *see Terry v. Ohio*, 392 U.S. 1, 30 (1968) (police officer may lawfully conduct brief stop if officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot"); *see also Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (routine traffic stop is more analogous to *Terry* stop than to formal arrest).  Evidence obtained as the result of an unjustified traffic stop "is subject to the fruit of the poisonous tree doctrine" and may be suppressed.  *United States v. Scopo*, 19 F.3d at 781 (citing *United States v. Hassan El*, 5 F.3d at 729); *see also Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

    On a motion to suppress, a defendant bears the initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure.  *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir.1980) (citations omitted), *cert. denied*, 450 U.S. 917 (1981); *United States v. Chavis*, 48 F.3d 871, 872 (5th Cir.1995); *United States v. Bayless*, 921 F. Supp. 211, 213 (S.D.N.Y. 1996).  Once the defendant has met this burden, the burden then shifts to the government to demonstrate by a preponderance of the evidence, *id.* at 213, that the search or seizure did not violate the Fourth Amendment.  *United States v. Arboleda*, 633 F.2d at 989; *see also United States v. Bonilla Romero*, 836 F.2d 39, 45 (1st Cir. 1987) ("[w]hen it has

acted without a warrant, the ultimate burden of persuasion is then upon the government to show that its evidence is not tainted") (citing *Alderman v. United States*, 394 U.S. 165, 183 (1969)), *cert. denied*, 488 U.S. 817 (1988).

Here, Maldonado testified that he conducted a traffic stop of the Ford Expedition that Williams was driving. Thus, the government bears the burden of establishing that the traffic stop was supported by probable cause or reasonable suspicion. I find that this burden has been satisfied.

Williams does not dispute that an officer's observation of a traffic violation ordinarily provides sufficient probable cause to justify a stop. *See*, *e.g.*, *Whren v. United States*, 517 U.S. 806, 810 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); *United States v. Harrell*, 268 F.3d 141, 148-49 (2d Cir. 2001) (officer's observations that car had defective brake light and impermissibly tinted windows justified traffic stop); *United States v. Odom*, 2004 WL 1179309, *4 (S.D.N.Y. 2004) (finding probable cause for traffic stop based upon officer's objectively reasonable observation of impermissibly tinted windows); *Woods v. Candela*, 921 F. Supp. 1140, 1144-45 (S.D.N.Y.) (finding that defendant was properly stopped for excessively tinted windows, in violation of New York law), *aff'd*, 104 F.3d 355 (2d Cir. 1996); *see also* N.Y. Vehicle and Traffic Law § 375(12-a)(b) (requiring windows that allow light transmittance of at least 70%). In the case at bar, Maldonado testified that when he approached the Ford Expedition, he observed that it had illegally tinted windows – an observation that was later confirmed by a tint meter test. (Tr. 7-8). No basis in the record exists to question the credibility of Maldonado's testimony or the objective reasonableness of his observations. Accordingly, I conclude that Officer

Maldonado had probable cause to believe that Williams was violating the state Vehicle & Traffic Law and to effect the traffic stop.

Williams argues that stop was nonetheless unlawful because the officers used the tinted windows as a pretext for stopping his vehicle. (Docket # 49). Specifically, he urges that the Court "hold that a 'reasonable' police officer would not have stopped the vehicle for the minor traffic violation here involved." (*Id.* at 8). The problem with Williams's argument is that it has been squarely rejected by the Supreme Court in *Whren v. United States*, 517 U.S. 806 (1996). In that case, the Court held that the constitutional reasonableness of a traffic stop does not depend upon an officer's actual motivation for the stop, but rather upon whether probable cause existed to believe a traffic violation occurred. The Court also rejected the contention that reasonableness depends upon a finding of whether a "reasonable officer" *would* have made the traffic stop, noting that "it seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a 'reasonable officer' would have moved to act upon the traffic violation." *Id.* at 815. *See also Scopo*, 19 F.3d at 782 ("[w]hen an officer observes a traffic offense – however minor– he has probable cause to stop the driver of the vehicle") (internal quotation omitted)). Thus, applying *Whren*, I find that Maldonado's traffic stop was lawful.

    **B. <u>Statements Made to Police Officers</u>:** Having found that the traffic stop was justified, I now turn to the question whether Williams's statements were obtained in violation of

his constitutional rights. The statements at issue are those that were made before Williams was placed in the patrol car.[6]

The government acknowledges that Williams was not advised of his *Miranda* warnings, but argues that such warnings were unnecessary because Williams was not in custody at that time. (Docket # 46 at 19). As framed by the Second Circuit,

> [c]ustodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (quoting *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987)) (internal citations omitted). Although there is no rule exempting traffic stops from the reach of *Miranda*, *see, e.g.*, *United States v. Newton*, 181 F. Supp. 2d 157, 170 (E.D.N.Y. 2002) ("Supreme Court did not adopt a bright-line rule that *Miranda* warnings are never required during [traffic] stops") (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)), routine traffic stops generally do not constitute custodial settings. *See Berkemer v. McCarty*, 468 U.S. at 440-42 (the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*"); *United States v. Newton*, 369 F.3d 659, 669 (2d Cir.) (acknowledging *Berkemer* holding that routine traffic stops do not constitute custodial detentions for purposes of *Miranda*), *cert. denied*, 543 U.S. 947 (2004); *United States v. Fernandez-Jimenez*, 2004 WL 1598653, *5 (S.D.N.Y.

---

[6] The government has conceded that the statements made by Williams to Parole Officer Valente while Williams was secured in the rear of Maldonado's police vehicle must be suppressed. (Docket # 46 at 23).

2004) ("[a]lthough motorists do not feel free to leave, traffic stops are not a form of custodial interrogation because they are brief and public") (citation omitted); *United States v. Perez*, 2002 WL 1835601, *6 (S.D.N.Y. 2002) ("persons temporally detained pursuant to [traffic] stops are not 'in custody' for the purposes of *Miranda*") (citation omitted).

Here, Maldonado posed his initial questions to Williams while Williams was still in his car – circumstances that were typical of a routine, non-custodial traffic stop. Moreover, Maldonado's questions concerning where Williams was coming from and where he was going are not uncommon questions during a traffic stop and do not themselves convert the traffic stop into a custodial one. The questions did not convey the threat of arrest and would not have led a reasonable person to conclude that he was in custody. Accordingly, I find that Williams was not in custody when he was questioned by Officer Maldonado while he remained in his car.

## II. Motion to Suppress Tangible Evidence

Williams also moves to suppress the firearm seized from his vehicle. Although he acknowledges that parolees enjoy diminished expectations of privacy, *see Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987), Williams asserts that the search of his vehicle was not a lawful parole search because the parole officers were acting under the direction of the police. (Docket # 49). The government opposes the motion, arguing principally that Williams validly consented to the search. The government asserts alternatively that the firearm was seized during a valid parole search that was authorized by the conditions of Williams's release. (Docket # 46).

Although the Fourth Amendment generally requires that a police officer first obtain a warrant before conducting a search of private property, *Maryland v. Dyson*, 527 U.S.

465, 466 (1999) (*per curiam*) (citing *California v. Carney*, 471 U.S. 386, 390-91 (1985)), a warrantless search is permissible if based upon the voluntary consent of a person authorized to provide consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973); *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995), *cert. denied*, 516 U.S. 1050 (1996). Such consent may be given either by the owner of the property that is to be searched, *Schneckloth v. Bustamonte*, 412 U.S. at 222, or by a third party possessing common authority over the property. *See United States v. Matlock*, 415 U.S. 164, 171 (1974).

The consent need only be voluntary, that is, obtained without coercion, and the owner need not be advised of his or her right not to consent. *See Schneckloth*, 412 U.S. at 241-42; *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995). The issue of voluntariness is to be determined based upon the totality of the circumstances. *Schneckloth,* 412 U.S. at 227; *United States v. Hernandez*, 5 F.3d 628, 632 (2d Cir. 1993); *United States v. Kon Yu-Leung*, 910 F.2d 33, 41 (2d Cir. 1990). "Consent must be a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993) (citations omitted), *cert. denied*, 511 U.S. 1130 (1994). The standard used to determine the voluntariness of an individual's consent is an objective one, *United States v. Garcia*, 56 F.3d at 423, and it is the government's burden to prove by a preponderance of the evidence that the consent was voluntary. *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 830 (1981).

In this case, Parole Officer Valente approached Williams while he was sitting in the rear seat of Maldonado's police car. Valente introduced himself and asked Williams whether the driver's license seized by Maldonado was his. Williams admitted that it was. (Tr. 48).

Valente continued to question Williams about what he was doing and whether he had a curfew. Williams explained that he was on his way home from the movies and that he did have a curfew. Valente then asked, "so, you're past your curfew?" and Williams admitted that he was. (Tr. 48). After some additional questions concerning his parole conditions, Valente told Williams that he would like to search the Ford and asked, "Is that okay?" Williams replied, "Yes." (Tr. 48).

Valente testified that he spoke to Williams in a normal conversational tone and that Williams did not appear to be under the influence of drugs or alcohol. Williams responded to Valente's questions in an appropriate manner and did not evidence any difficulty in comprehending Valente's questions. (Tr. 48-49). Valente did not display his weapon, nor did any of the other officers who were present. (Tr. 48). On this record, I find that Williams voluntarily consented to the search of the Ford, and I thus recommend that Williams's motion to suppress the firearm seized from the vehicle be denied.[7] *See United States v. Watson*, 423 U.S. 411, 424 (1976) ("the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search"); *United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir.) (*per curiam*) ("the fact that a defendant is in custody does not alone vitiate his consent to search"), *cert. denied*, 479 U.S. 827 (1986).

### III.  Motion to Dismiss Indictment

Finally, Williams moves to dismiss the indictment on the grounds of evidentiary insufficiency. (Docket # 30). It is well-established, however, that an indictment that is valid on

---

[7] Having found that Williams voluntarily consented to the search of his residence, I do not reach the question of whether the search was constitutional because it was authorized by the conditions of Williams's parole.

its face, as is the case here, cannot be dismissed on the ground that it is based on inadequate or insufficient evidence.  *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990).  Instead, the time to advance such a motion is after the government has presented its case at trial.  *See*, *e.g.*, *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992); Fed. R. Crim. P. 29(a).

Applying the above-cited authority, it is my recommendation that Williams's motion to dismiss on the grounds of evidentiary insufficiency be denied at this time.

## CONCLUSION

For the foregoing reasons, it is my recommendation that Williams's motion to suppress statements made while he was seated in the Ford Expedition **(Docket # 30)** be **DENIED**.  I further recommend that Williams's motion to suppress tangible evidence **(Docket # 30) be DENIED**.  Finally, it is the recommendation of this Court that Williams's motion to dismiss the indictment based upon evidentiary insufficiency **(Docket # 30)** be **DENIED.**

                                      *s/Marian W. Payson*
                                      MARIAN W. PAYSON
                                  United States Magistrate Judge

Dated:  Rochester, New York
        May   13  , 2008

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[8]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
        May   13  , 2008

---

[8] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).